OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
This action calls upon the court to balance the competing rights of a judgment creditor, who is legally entitled to use authorized procedures to collect a debt, and a judgment debtor, whose sole financial resources are legally exempt from seizure by the creditor. The circumstances in this action are not uncommon. Nevertheless, New York courts are rarely asked to reconcile the conflict presented here, primarily because the overwhelming majority of consumer transaction judgments in New York State are granted upon the debtor’s default.
In this case, defendant Elizabeth Gregory, one of the debtors, has appeared. She asks the court to resolve the tensions created by the collision of the parties’ respective legal rights. For the reasons discussed below, the court finds that plaintiffs use of legally authorized enforcement procedures to recover its money judgment from either defendant will be circumscribed as set forth in this decision and order.
Facts and Procedural Background
Plaintiff Contact Resource Services, LLC claims that defendants Samuel Gregory, Sr. and Elizabeth Gregory have failed to pay one or more installments on a promissory note they made on or about November 1, 1984. Specifically, plaintiff claims that defendants owe plaintiff $2,610.82, plus interest at the rate of 15.950% per annum from August 16, 2000, together with statutory costs and disbursements.
Defendant Samuel Gregory, Sr. is married to Elizabeth Gregory. However, the couple has been estranged for many years. Each maintains finances separate from the other.
Defendant Elizabeth Gregory is in her mid-50s. Ms. Gregory worked for the housekeeping department at Strong Memorial Hospital in Rochester, New York, for 18 years. Due to serious health problems, she became blind. Since 1998, Ms. Gregory has been totally disabled. Her sole source of income is her limited *970 federal monthly Social Security disability (SSD) payment that she receives under title II of the Social Security Act (42 USC § 401 et seq.).
Ms. Gregory would like to be able to pay her debt to plaintiff. However, given her limited income, her essential living expenses, and her need for costly medications, she is unable to do so.
Ms. Gregory currently has no bank account into which her Social Security disability benefits can be deposited directly. Instead, she relies on relatives to take her to their banks to cash her monthly checks. If her relatives are not available, she pays a check cashing company to cash her check.
Ms. Gregory used to have a checking account at HSBC Bank into which her SSD benefits were deposited directly every month. However, when a prior judgment creditor imposed a restraining notice on her account, she was forced to pay $550 to both her bank and the creditor to obtain access to her money. After that experience, Ms. Gregory closed her bank account.
Because of her blindness and other health problems, Ms. Gregory’s inability to have immediate and direct access to her SSD benefits causes her particular difficulties. Ms. Gregory must wait each month until her check is cashed before she has the money to pay her expenses. In addition, after cashing her check each month, she feels compelled to carry all her cash with her to prevent its loss or theft.
Ms. Gregory would like to open a bank account into which her Social Security disability payments once again can be deposited directly every month. What presently concerns Ms. Gregory is that if she does so, plaintiffs debt collection efforts could result in the unnecessary freezing of her account and the imposition of unaffordable bank charges that she will be forced to pay out of her Social Security disability income.
Procedural Background
Plaintiff Contact Resources, LLC has moved for summary judgment against defendants Samuel Gregory, Sr. and Elizabeth Gregory for the amount of $2,610.82, plus 15.950% annual interest from August 16, 2000, plus costs and disbursements. Defendant Samuel Gregory, Sr. neither appeared nor responded to plaintiff’s summary judgment motion. Defendant Elizabeth Gregory appeared by her attorney, but does not challenge plaintiffs assertions regarding her debt. Plaintiff is therefore *971 entitled to summary judgment against defendants for the amount sought.[2]
While she does not dispute her debt, Elizabeth Gregory moves for a protective order under CPLR 5240. She maintains that because her only financial resources are her limited Social Security disability benefits, plaintiffs use of a restraining notice to enforce its money judgment against her should be restricted.
Legal Analysis
The Social Security Act’s “anti-attachment” provision, 42 USC § 407 (a), protects Social Security benefits against “execution, levy, attachment, garnishment, or other legal process.” The Supreme Court has observed that section 407 “imposes a broad bar against the use of any legal process to reach all security benefits.” (Philpott v Essex County Welfare Bd., 409 US 413, 417 [1973]; accord Bennett v Arkansas, 485 US 395 [1988]; In re Buren, 725 F2d 1080, 1084 [6th Cir 1984], cert denied sub nom. Hildebrand v Social Security Admin., 469 US 818 [1984].) The “anti-attachment” provision recognizes that because Social Security payments are intended to meet the beneficiaries’ most basic needs, those funds must be immune from creditors unless Congress expressly provides otherwise. (See In re Buren, 725 F2d at 1084 [citing legislative history]; Dionne v Bouley, 757 F2d 1344, 1355 [1st Cir 1985].) Accordingly, Elizabeth Gregory’s Social Security disability income is exempt from seizure by creditors, and plaintiff is barred from using enforcement mechanisms to collect its judgment from her SSD benefits. (See State of New York v Jacobs, 167 AD2d 876, 876-877 [4th Dept 1990].)
Notwithstanding section 407 (a)’s broad proscription, Ms. Gregory seeks additional protection from the court. Her concerns arise from the fact that when a creditor attempts to collect a money judgment from a debtor, New York law gives the creditor the right to serve a restraining notice on a debtor’s bank. (See CPLR 5222.) This restraining notice forbids the bank from releasing any funds in the debtor’s bank account to
“any person other than the sheriff . . . except upon direction of the sheriff or pursuant to an order of *972 the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs.” (CPLR 5222 [b].)
New York’s restraining notice provision does not require a creditor to ensure that there are nonexempt funds in a debtor’s bank account before serving a restraining notice. Therefore, by serving a restraining notice on a debtor’s bank, a creditor can freeze a debtor’s bank account and prevent a debtor from withdrawing his or her funds even when the only funds in the debtor’s account are exempt from seizure.
When the only funds in a judgment debtor’s bank account are exempt from seizure, the restraining notice accomplishes no useful function for the creditor. To the contrary, such a restraining notice serves only to harm particularly vulnerable individuals who, like Ms. Gregory, depend upon immediate and regular access to their exempt Social Security funds to maintain their lives.
Compounding this harm is many banks’ policy and practice of deducting a “legal processing fee” from a judgment debtor’s bank account upon the receipt of a restraining notice. This “legal processing fee” is deducted from the debtor’s account even if the creditor, who served the restraining notice, is not entitled to seize any money from the account. The “legal processing fees” charged by banks in the Rochester area range from $20 to $125. (See affidavit of Peter Dellinger, Esq. U 16.) For people like Ms. Gregory, who must survive on small fixed incomes, the loss of even $20 can mean the difference between filling a critically needed prescription or a trip to the emergency room, or the difference between paying the rent on time or facing eviction.
As plaintiff correctly points out, New York law offers a remedy to debtors whose bank accounts containing solely exempt funds are frozen by virtue of a restraining notice. Under CPLR 5222 (d), a creditor who serves a restraining notice on a third party must provide the judgment debtor a copy of both the restraining notice and a “[njotice to judgment debtor or obligor” (debtor notice) within four days of service of the restraining notice.[3] The debtor notice directs a debtor who believes that his or her funds are exempt from seizure to “act promptly,” and states *973 that he or she “may contact the person sending this notice.” (CPLR 5222 [e].)
The notice also informs the debtor that “[t]he law (New York civil practice law and rules, article four and sections fifty-two hundred thirty-nine and fifty-two forty) provides a procedure for determination of a claim to an exemption.” (CPLR 5222 [e].) Pursuant to CPLR 5239, a judgment debtor can challenge a restraining notice by commencing a special proceeding in court against the judgment creditor “to determine rights in the property or debt.”
The information in the debtor notice, coupled with the special proceeding remedy provided by CPLR 5339, are undoubtedly adequate to protect debtors in many situations. For several reasons, however, these remedies do not prevent the irreparable harm suffered by people living on small fixed incomes when their bank accounts are unnecessarily frozen. First, because the debtor’s bank account can be frozen for up to four days before the debtor notice must be served, the debtor is deprived of critically needed funds for days before he or she is told why the account was frozen or what his or her options are. Second, even if the debtor follows the debtor notice’s suggestion to contact the person who sent the notice, there is no requirement, let alone guarantee, that the creditor will be responsive to the debtor.[4]
Third, to pursue a special proceeding in court under CPLR 5339, let alone to understand what the debtor notice’s reference to “a procedure for determination of a claim to an exemption” means, a debtor would surely have to hire an attorney. Clearly, people like Ms. Gregory, who must use every dollar they receive for necessities of daily life, cannot afford to hire attorneys.[5] Finally, even if a low-income debtor were able to find an attorney to vacate the restraining notice, many banks, as discussed above, will deduct a “legal processing fee” from the debtor’s exempt funds.
*974 To address her concerns, Ms. Gregory asks the court to impose certain restrictions on the enforcement measures that plaintiff uses to collect its judgment against her. She offers three proposals for the court’s consideration.
As her preferred option, Ms. Gregory asks the court to require plaintiff to include the following language in any restraining notice it serves pursuant to CPLR 5222:
“SPECIAL INSTRUCTIONS: When Social Security Disability (SSD) and/or Supplemental Security Income (SSI) is the sole basis for the property in your possession or custody, this notice shall not be effective. If that condition applies, please complete the applicable statement at the bottom of this page and return this notice to [the plaintiff at the address indicated].” (Affidavit of Peter Dellinger, Esq. 1125.)
Alternatively, Ms. Gregory asks the court to permit plaintiff to serve a restraining notice on her bank only after the bank discloses the existence of nonexempt funds in her account pursuant to an information subpoena plaintiff serves on her bank pursuant to CPLR 5223. (See Letter of Peter Dellinger, Esq., dated Aug. 17, 2004, at 3.)
As a final option, Ms. Gregory offers to open a bank account with Internet access, and to give plaintiff her password to enable plaintiff to monitor her bank account at any time. Under this proposal, the court would prohibit plaintiff from serving a restraining notice on Ms. Gregory unless plaintiff learned that nonexempt funds had been deposited into her account. (See id. at 4.)
Plaintiff neither agrees to any of these options, nor offers any other suggestions to protect Ms. Gregory’s as well as its own valid interests. To the contrary, according to plaintiffs attorney:
“Ms. Gregory is simply attempting to insulate her financial situation from creditors and she is asking the court to participate in that endeavor. Unfortunately, as I have indicated in the past, I can not [sic] participate in that exercise. Neither I nor my client will assist this debtor or any other debtor in attempting to insulate or hide their assets from legitimate enforcement activities.” (Affidavit of Francesco Fabiano, Esq. 11 28.)
The court disagrees with plaintiffs counsel’s assessment of Ms. Gregory’s request. None of her proposals would conceal in *975 formation about her financial status from plaintiff. Indeed, plaintiff would be able to obtain information about Ms. Gregory’s finances under each option. Likewise, none of Ms. Gregory’s proposals would prevent plaintiff from using legally authorized enforcement procedures to collect its judgment from any nonexempt resources she might receive. Each would simply restrict plaintiff from taking steps to block Ms. Gregory’s ability to have immediate and full access to funds that plaintiff is legally barred from seizing in any event.
The court also takes issue with plaintiffs contention that defendant is asking the court to participate in Ms. Gregory’s “attempt [ ] to insulate her financial situation from creditors.” (Id.) Just as plaintiff has appropriately asked the court to secure its legal right to a money judgment against Ms. Gregory, Ms. Gregory has appropriately asked this court to safeguard her legal right to have unimpeded access to her exempt Social Security disability income. It is not merely the province of the court, but the obligation of the court, to protect every party’s legal interests, particularly where, as here, there is friction between the parties’ respective rights.
When a judgment creditor takes steps to collect a debt, the laws of New York State are mindful of the court’s responsibilities in this regard. CPLR 5240 provides that “[t]he court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.” The purpose of this provision is to provide the courts with “broad discretionary power to control and regulate proceedings to enforce a money judgment to prevent ‘unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice.’ ” (Liberty Co. v Rogene Indus., 272 AD2d 382, 382 [2d Dept 2000] [citation omitted]; see Guardian Loan Co. v Early, 47 NY2d 515, 517 [1979]; Paz v Long Is. R.R., 241 AD2d 486, 487 [2d Dept 1997].)
The court cannot fathom any legitimate reason why a creditor would need or want to impose a restraining notice on a debtor’s bank account that contains only exempt Social Security benefits. If the creditor’s goal is merely to prevent the debtor from being able to withdraw his or her funds for a period of time, or to cause the debtor to be subjected to a bank’s “legal processing fees,” then such use of a restraining notice would be entirely illegitimate.
The court, therefore, cannot conceive of any valid reason why plaintiff would object to any of Ms. Gregory’s proposals to *976 ensure that her bank account is not needlessly frozen. Each option would enable plaintiff to invoke every available legal enforcement device to discover whether Ms. Gregory has any nonexempt funds, and to satisfy its judgment from any nonexempt funds she might have.[6]
For these reasons, the court grants Ms. Gregory’s motion for a protective order under CPLR 5240. Accordingly, plaintiff is ordered to include the following language in any restraining notice it issues pursuant to CPLR 5222 in its efforts to collect its judgment from either defendant in this action:[7]
“SPECIAL INSTRUCTIONS: When Social Security Disability [SSD] and/or Supplemental Security Income [SSI] is the sole basis for the property in your possession or custody, this Notice shall not be effective. If that condition applies, please check the box and complete the applicable statement at the bottom of this page, and return this Notice to [the plaintiff or the plaintiff’s attorney at the address indicated].
“YOUR REPLY TO THE SPECIAL INSTRUCTIONS (CHECK THE BOX IF APPLICABLE):
“ n The sole basis for the property in our possession is Social Security Disability [SSD] and/or Supplemental Security *977 Income [SSI]. Therefore, we have not restrained the property pursuant to your instructions.
“(Signed): _Date: _
“Compliance Officer or Designee.”
The “SPECIAL INSTRUCTIONS” and “REPLY” paragraphs set forth above must be in 12-point font or larger, and must be in bold font, as written here.
This modification to the restraining notice authorized by CPLR 5222 places, at best, a minimal imposition on plaintiff, and adequately responds to the concerns raised by Ms. Gregory. It protects each party’s legal rights, and is therefore a reasonable and practical resolution of the parties’ different interests.[8]
Conclusion
For the reasons discussed above, plaintiff’s motion for summary judgment against defendants Samuel Gregory, Sr. and Elizabeth Gregory in the amount of $2,610.82, plus 15.950% annual interest from August 16, 2000, plus costs and disbursements, is granted. Defendant Elizabeth Gregory’s motion for a protective order pursuant to CPLR 5240 is granted as delineated above.[9]

. Plaintiffs unverified complaint, attached to its summary judgment motion, alleges that on or about November 1, 1984, defendants entered into a written promissory note with Citibank that was later transferred to plaintiff. The court notes that plaintiffs summary judgment motion does not include the promissory note, the documents transferring the note to plaintiff, or any documents stating how much money was originally borrowed or how much money was repaid.

. These documents must be served on the judgment debtor either personally or by first-class mail. (CPLR 5222 [d].)

. CPLR 5222 requires neither the restraining notice nor the debtor notice to contain the name and telephone number of a person who has the authority to discuss and resolve the matter.

. The court takes judicial notice that, as a practical matter, the debtor notice’s statement that “YOU MAY CONSULT AN ATTORNEY, INCLUDING LEGAL AID IF YOU QUALIFY” (CPLR 5222 [e]) offers no practical help to individuals whose limited income would qualify them for assistance from a legal aid organization. Civil legal aid organizations in New York State are not required to represent everyone who qualifies, and they do not do so because of their limited resources. Further, most civil legal organizations do not routinely represent individuals in consumer transaction matters.

. Plaintiffs counsel asserts that because Ms. Gregory can open a bank account in a bank that will not necessarily freeze her account upon the receipt of a restraining notice, the court’s intervention at this time would be premature and inappropriate. The court disagrees. It is entirely appropriate for the court to impose limitations on a creditor’s use of enforcement procedures in the context of the underlying action. It is not necessary for a court to delay doing so until a creditor initiates enforcement proceedings. (See Paz v Long Is. R.R., 241 AD2d at 487; cf. King v Schafer, 940 F2d 1182, 1185 [8th Cir 1991] [a creditor’s threat to use legal process to attach a debtor’s exempt Social Security funds constitutes prohibited “other legal process” within the meaning of the Social Security Act’s “anti-attachment” provision].)

. As previously noted, defendant Samuel Gregory, Sr. did not appear in this action. Nevertheless, because it is possible that Mr. Gregory has a bank account that contains only exempt Social Security funds, the court invokes its authority to limit, on its own initiative, plaintiff’s use of enforcement procedures with respect to Samuel Gregory as well as Elizabeth Gregory. (See CPLR 5240.)

. In the court’s view, of the three options proposed by Ms. Gregory’s attorney, the modification of the restraining order used by plaintiff in this case provides the most effective protection, is the easiest to implement, and imposes the least burden on plaintiff.

. The court greatly appreciates the efforts taken by both parties’ counsel to obtain information about different banks’ various practices when they receive restraining notices. The fact that each bank creates its own procedures for responding to restraining notices reinforces the court’s conclusion that a protective order pursuant to CPLR 5240 is justified in this action.